[Civ. No. 28831. First Dist., Div. Four. Apr. 27, 1972.]

HUGH KING, Plaintiff and Appellant, v.
CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS
BOARD et al., Defendants and Respondents.

200

**COUNSEL**

Paul N. Halvonik and Charles C. Marson for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Acting Assistant Attorney General, Roderick Walston and Asher Ruben, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**RATTIGAN, J.**—On this appeal from a judgment denying issuance of a writ of mandate, we are confronted with the question whether unemployment compensation benefits may constitutionally be denied a claimant whose employment was terminated because he insisted upon wearing a beard. We answer the question in the negative as to this particular claimant, reverse the judgment against him, and order remand of the cause for further administrative proceedings to be conducted in light of the constitutional problems presented.

Pursuant to section 1326 and related provisions of the Unemployment Insurance Code,[1] Hugh King (hereinafter "claimant") applied to the State Department of Employment ("department") for unemployment compensation benefits. The department denied his claim upon the ground that he was ineligible for benefits. Claimant appealed to a referee (§ 1328) and received an administrative hearing. (§ 1334.) The referee entered a written decision affirming the department's denial of benefits. (*Ibid.*) Upon claimant's further appeal to the California Unemployment Insurance Appeals Board (§ 1336), the board produced a written decision affirming the referee's determination. (*Ibid.*) Claimant then commenced this mandamus proceeding in the superior court pursuant to section 1094.5, and related provisions, of the Code of Civil Procedure. In his petition as amended, he (1) named the department and the Appeals Board as respondents and (2) sought a writ of mandate requiring them to set aside the administrative determinations mentioned. He appeals from a minute-order judgment denying his amended petition.

### Facts

The following factual recital is supported by the testimony received by the referee, by both administrative decisions based upon it, and by those allegations of the amended petition for writ of mandate which were admitted by respondents in their return thereto in the superior court:

For two years prior to April 1968, claimant was employed by Dictaphone Corporation (hereinafter the "employer") as a service technician in the San Francisco area. He had worn a beard prior to this period, but had removed it when he applied for work at Dictaphone. His duties as a service technician involved the servicing and repair of the employer's

---

[1]Except where otherwise indicated, all statutory references herein are to the Unemployment Insurance Code.

business machines at the offices of its customers. In keeping with its "company policy" relative to the appearance of its employees who were seen by its customers, the employer had adopted a rule on the subject.[2] Claimant was aware of the rule throughout his employment. He nevertheless grew a moustache while on vacation in April 1967, and wore it when he returned to work in that month. The moustache was tolerated by the employer, and produced no complaints from its customers.

Claimant grew a beard during his next two-week vacation, and wore it when he returned to work on or about April 19, 1968. The employer had no bearded service technicians at that time, considered that claimant would not be a proper representative of the employer if he wore a beard calling upon its customers, and formed the judgment that "we couldn't allow it." Claimant was accordingly told that "[i]t . . . [the beard] . . . would have to go" or his services would be terminated.[3]

Claimant testified that he knew of a "backlog of work to be done in . . . [Dictaphone's] . . . shop" at that time, and that he then inquired "if there was work I could do that wouldn't be exposing me to customers . . . and it turned out there was not." He "preferred to keep the beard" for personal reasons.[4] When this decision was announced, his employment was termi-

---

[2]"Service employees must be neat. Due consideration should be given personal cleanliness, beard, shoes, clothes, hair and nails."

[3]We here quote the testimony given at the administrative hearing by the employer's district service manager.

[4]The only evidence of his reasons appears in the following exchange at the administrative hearing:

"Q. [put by claimant's counsel to the employer's service manager]: Did you ever ask Mr. King [claimant] why he wanted to wear a beard?

"A. No, I can't say I did.

"Q. And he never offered? [*Sic*]

"A. No.

"    .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"REFEREE: I'd like to ask Mr. King why he felt the beard was important if you wish to go ahead.

". . . [Claimant's counsel:] . . . That was the question I wanted to ask him. Why do you wear a beard, Mr. King?

"    .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"CLAIMANT: I feel very odd without one. It seems the natural thing to have. I originally grew one not because I wanted a beard but because I just intensely disliked shaving and only after I had a beard I got to like it.

"    .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"REFEREE: So as I understand it now you just wanted to grow a beard? I haven't heard you say anything about religious scruples that require you to wear a beard. It's just you feel more comfortable with one, is that right?

"A. Yes.

"Q. More natural with one and would I properly infer from what you said

nated. (Apparently, he quit his job voluntarily; this is not clear but, at the administrative hearing, he and the employer agreed that he would have kept his job if he had removed the beard.)

Upon the foregoing evidence, the referee and the Appeals Board determined that claimant was ineligible for unemployment compensation benefits because he had left his employment "voluntarily without good cause."[5] In reviewing such determinations, when reached by the department or by the Appeals Board (or both) and when challenged in a mandamus proceeding brought under Code of Civil Procedure section 1094.5, the superior court is required to weigh the administrative evidence and to exercise "independent judgment" thereon. (*Thomas* v. *Cal. Emp. Stab. Com.* (1952) 39 Cal.2d 501, 504 [247 P.2d 561]; *Sears, Roebuck & Co.* v. *Walls* (1960) 178 Cal.App.2d 284, 288 [2 Cal.Rptr. 847]; Deering, Cal. Administrative Mandamus (Cont. Ed. Bar 1966) §§ 5.53-5.63, pp. 65-74 and Appendix A, pp. 320-321.)

In the ordinary case where the superior court has exercised "independent judgment" in reviewing the administrative record, the question on appeal

---

. . . [of] . . . this two years you worked for Dictaphone without wearing a beard you didn't feel comfortable?
"A. Yes, sir.
"Q. Not having the beard?
". . . [Claimant's counsel:] . . . You believe this enhances your appearance?
"A. Yes, sir."

[5]In its written decision, the Appeals Board summed up the situation as follows:
". . . [T]he employer established a rule relative to cleanliness and neatness. This rule was known to the claimant and certainly was a reasonable rule. The record is clear that when the claimant reported for work after his vacation, the beard was far from neat. Actually, it represented a two-weeks' growth of whiskers. Had the employer permitted the claimant to call on its customers in this unkempt condition, the employer's interest would certainly have been damaged. It was not unreasonable, in our opinion, for the employer to insist that its rule relative to neatness be followed. The claimant had the clear choice of shaving his beard and remaining in employment or retaining his beard and becoming unemployed. Section 100 of the Unemployment Insurance Code provides for the payment of benefits to those individuals who are unemployed through no fault of their own. Certainly, the claimant had every right to grow a beard if he so desired. However, in so doing he violated a reasonable employer's rule.
"Insofar as the record shows, he desired to grow a beard only because he felt comfortable with a beard. There was no showing or contention that the beard was worn for any other purpose. As far as the record shows, the claimant had no facial disfigurements which the beard may have camouflaged nor did he have any religious or moral scruples requiring the wearing of a beard. He wore a beard merely by personal preference.
"The claimant was confronted with the clear choice of retaining employment or accepting unemployment. The facts show that he chose unemployment for personal non-compelling reasons and we conclude the claimant, in effect, voluntarily left his most recent work and his reasons for so doing were not of such a compelling nature as to constitute good cause within the meaning of section 1256 of the code."

is whether that judgment is supported by substantial evidence. (*Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20]; Deering, *op. cit. supra,* § 15.25, pp. 280-281.) In the present case, however, in the trial court and on this appeal, claimant has raised a question of law, not evidence: he challenges the action of the trial court, and the administrative determinations reviewed by it, upon the ground that the denial of unemployment compensation benefits, after he had been discharged from employment because he wore a beard and refused to remove it, operates to deny him the right of freedom of expression guaranteed him by the First and Fourteenth Amendments to the United States Constitution.

We first note that claimant is not challenging the reasonableness or validity of his discharge by the employer; he is advancing his constitutional argument only as to the state's action in denying him unemployment compensation benefits. A similar contention was made in *Sherbert* v. *Verner* (1962) 374 U.S. 398 [10 L.Ed.2d 965, 83 S.Ct. 1790], where the claimant of unemployment compensation benefits, a member of the Seventh-Day Adventist Church, had been discharged by her employer because she would not work on her faith's Sabbath Day. (*Id.,* at p. 399 [10 L.Ed.2d at p. 967].) Having been unable to obtain other employment for the same reason, she filed a claim for unemployment compensation benefits pursuant to the relevant law of her state (South Carolina). (*Id.,* at pp. 399-400 [10 L.Ed.2d at pp. 967-968].) The claim was denied, both administratively and judicially, under a provision of state law disqualifying insured workers who failed, " 'without good cause . . . to accept . . . suitable work when offered . . .' " (*Id.,* at pp. 400-401 [10 L.Ed.2d at p. 968].)

Reversing the South Carolina court, the United States Supreme Court held that the disqualifying provision of state law was constitutionally defective, as it pertained to the claimant, because it operated to infringe upon her First Amendment right to free exercise of religion (*Sherbert* v. *Verner, supra,* 374 U.S. 398 at pp. 402-405 [10 L.Ed.2d at pp. 969-971]) and that no "compelling state interest" had been shown which would justify such infringement. (*Id.,* at pp. 406-410 [10 L.Ed.2d at pp. 971-974].) On the point of a "compelling state interest," the court observed that "[i]t is basic that no showing merely of a rational relationship to some colorable state interest would suffice; in this highly sensitive constitutional area '[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation.' *Thomas* v. *Collins,* 323 U.S. 516, 530." The court further held that, in the *Sherbert* record, "no such justifications underlie the determination of the state court that . . . [the claimant's] . . . religion makes her ineligible to receive benefits." (*Id.,* at p. 409 [10 L.Ed.2d at p. 973].) ▮ The present claimant contends that the *Sherbert* decision is controlling here

because his beard, and his insistence upon wearing it, constituted an exercise of his right to freedom of speech as similarly guaranteed by the First Amendment.

Claimant's argument must be sustained if its premise is correct: i.e., if the wearing of a beard is symbolic conduct entitled to constitutional protection as a variant exercise of free speech. The United States Supreme Court has not resolved this question (*Cowgill* v. *California* (1970) 396 U.S. 371, 372 [24 L.Ed.2d 590, 591, 90 S.Ct. 613] [concurring opinion by Harlan, J.]), and has indicated that the First Amendment right to freedom of speech does not embrace "an apparently limitless variety of conduct . . . whenever the person engaging in the conduct intends thereby to express an idea." (*United States* v. *O'Brien* (1968) 391 U.S. 367, 376 [20 L.Ed.2d 672, 679, 88 S.Ct. 1673].) Dealing with similar adventures in personal habits (notably hair styles), state and federal courts have reached sharply divergent viewpoints. (See Note (1971) 84 Harv.L.Rev. 1702 and cases cited; 11 Santa Clara Law. 92 and cases cited.)

The decisional law of California, however, is explicit on the point: "A beard, for a man, is an expression of his personality. On the one hand it has been interpreted as a symbol of masculinity, of authority and of wisdom. On the other hand it has been interpreted as a symbol of nonconformity and rebellion. But symbols, under appropriate circumstances, merit constitutional protection. [Citation.]" (*Finot* v. *Pasadena City Bd. of Education* (1967) 250 Cal.App.2d 189, 201 [58 Cal.Rptr. 520].) *Finot* involved the constitutional rights of a bearded public employee (a high school teacher), as distinguished from one employed in the private sector, but we perceive no essential distinction.

Respondents would distinguish *Sherbert* (*Sherbert* v. *Verner, supra,* 374 U.S. 398) upon the ground that it dealt with the claimant's religious convictions, while the present claimant's purpose in wearing his beard was only personal "comfort." But, in the first place, this view of his purpose reflects an oversimplified version of his account of the matter, in which the reference to his "comfort" was made in affirmative responses to leading questions (see fn. 4 and accompanying text, *ante*); the same is true of the Appeals Board's view of the same account. (See fn. 5, *ante*.) Secondly, the *Finot* decision points out that the essential fact is the wearing of a beard, not the reason for it, and that the beard itself, as such, entitles the wearer to constitutional protection. (*Finot* v. *Pasadena City Bd. of Education, supra,* 250 Cal.App.2d 189 at pp. 201-202.) Finally, First Amendment rights are not to be classified by rank where they exist: they are "cognate rights . . . and therefore are united in the First Article's assurance," and

comprise a "conjunction of liberties [which] is not peculiar to religious activity and institutions alone." (*Thomas* v. *Collins* (1944) 323 U.S. 516, 530-531 [89 L.Ed. 430, 440, 65 S.Ct. 315].)

As *Sherbert* and *Finot* control this case for the reasons just stated, the terminal question is whether "compelling state interest" has been shown which "justifies the substantial infringement of . . . [claimant's] . . . First Amendment right." (*Sherbert* v. *Verner, supra,* 374 U.S. 398 at p. 406 [10 L.Ed.2d at p. 972].) The test of such showing involves considering (1) whether the state and the administration of its unemployment compensation law would be adversely affected if benefits were to be granted and (2), if that possibility exists, whether the state has demonstrated that no conceivable alternatives would preclude the adverse results without "infringing First Amendment rights." (*Id.,* at pp. 407-408 [10 L.Ed.2d at pp. 972-973]; *Finot* v. *Pasadena City Bd. of Education, supra,* 250 Cal.App.2d 189 at pp. 199-200.) The present record does not show the existence of the first possibility mentioned. It does not indicate, either, that all or any conceivable alternatives were explored before claimant received the ultimatum which resulted in the termination of his employment: e.g., the employer was not fully examined, at the administrative hearing, as to whether a bearded service technician was offensive to its customers in fact, or the prospect that claimant could have performed shop work which would not have involved his giving such offense to the customers. Failing any evidence in these respects, and under compulsion of *Sherbert* and *Finot,* we are required to reverse the judgment and direct the remand hereinafter ordered.

Our decision goes no further than to acknowledge that the state is constitutionally inhibited from denying unemployment compensation benefits to an applicant who has been discharged from employment because of personal action which is constitutionally protected; we neither hold nor suggest that a bearded person has a constitutional right to a job, and we do not reach or affect a private employer's right to manage its own business. It may also be acknowledged that payment of unemployment compensation benefits to this claimant (if such result ultimately materializes) could penalize the employer herein to the extent, if any, that its "reserve account" with the department is affected. (See, e.g., § 1026 et seq.)[6] Such event, however, may be regarded as part of the price which the employer

---

[6]Because this possibility exists, we note that claimant did not name the employer as a party respondent in his mandamus proceeding in the superior court. Although the parties to the appeal have not raised this point, we mention it for their consideration. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 133-139, pp. 1805-1818; Deering, *op. cit. supra,* § 9.13, p. 144.)

must pay for participating in an unemployment compensation system which is administered by the state and is, therefore, subject to the state's constitutional obligations; it does not mean that the employer is not free to hire and fire as it pleases.

The judgment is reversed. The superior court is directed to remand the cause to the Appeals Board for further consideration consistent with the views expressed herein.

Devine, P. J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied June 22, 1972.