[Civ. No. 31524. First Dist., Div. Three. May 9, 1973.]

MELVIN R. THORNTON, Plaintiff and Appellant, v.
DEPARTMENT OF HUMAN RESOURCES DEVELOPMENT et al.,
Defendants and Respondents.

COUNSEL

Stephen K. Easton and Eugene M. Swann for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Asher Rubin, Deputy Attorney General, for Defendants and Respondents.

OPINION

BROWN (H. C.), J.—On this appeal from a judgment denying issuance of a writ of mandate, appellant raises the question whether unemployment benefits may constitutionally be denied him under the circumstances in which he was discharged. He also argues that his conduct in refusing to

shave his beard was not misconduct within the meaning of Unemployment Insurance Code section 1256. It is concluded that the appellant should prevail on both grounds and that the judgment should be reversed.

The facts disclose that appellant Melvin Thornton had worked for seven months as assistant manager of the Round Table Pizza Parlor in Palo Alto prior to his discharge. Pizza and beer were served from a counter in this establishment and appellant's duties included tending bar and supervising the kitchen employees. Appellant was also responsible for enforcing the employer's rules which did not contain a prohibition against wearing beards. Appellant himself had worn a beard for approximately a month before being discharged and had received no negative comments from the management.

When appellant reported to work on December 20, 1970, he discovered that the management had already scheduled someone else to work in his place. The manager told appellant that he was fired unless he would shave off his beard. Appellant requested that he be allowed to work his shift and defer a decision about the beard to the next day. This request was refused and appellant was not allowed to continue working.

A factual situation very similar to that in the instant case was before division four of this district in *King* v. *Unemployment Ins. Appeals Bd.,* 25 Cal.App.3d 199 [101 Cal.Rptr. 660]. The claimant in *King* was unemployed as a business machine serviceman dealing directly with the employer's customers. He had grown a beard while on vacation and, in keeping with company policy, was told that he could not keep the beard and remain on the job. When the claimant applied for unemployment benefits, he was found ineligible because he left his employment voluntarily without good cause. The Court of Appeal in *King* held that the wearing of a beard is symbolic conduct entitled to the constitutional protection of the First Amendment. The court pointed to the fact that the United States Supreme Court has not directly decided this issue but "[t]he decisional law of California, however, is explicit on the point: 'A beard, for a man, is an expression of his personality. On the one hand it has been interpreted as a symbol of masculinity, of authority and of wisdom. On the other hand it has been interpreted as a symbol of nonconformity and rebellion. But symbols, under appropriate circumstances, merit constitutional protection. [Citation.]' (*Finot* v. *Pasadena City Bd. of Education* (1967) 250 Cal.App. 2d 189, 201 [58 Cal.Rptr. 520].) *Finot* involved the constitutional rights of a bearded public employee (a high school teacher), as distinguished from one employed in the private sector, but we perceive no essential distinction." (*King* v. *Unemployment Ins. Appeals Bd., supra,* at p. 205.)

We followed the opinion of *King* v. *Unemployment Ins. Appeals Bd.*, *supra*, in *McCrae* v. *California Unemployment Ins. Appeals Bd.*, 30 Cal. App.3d 89 [106 Cal.Rptr. 159].

■ To hold that a particular action involves a First Amendment right does not dispose of the issue now before this court. Not every exercise of a right which comes within the First Amendment is entitled to protection. Thus, appellant's action in *McCrae*, i.e., refusal to cut his shoulder-length hair, was not entitled to constitutional protection because appellant refused a reasonable alternative offered to him, i.e., wearing a hairnet. The court in *King* felt it necessary to remand the case to the appeals board for consideration of such matters as whether the employer had an alternative or whether the bearded employee was in fact offensive to the customers.

Both *McCrea* and *King* are in reality applying the test articulated by the Supreme Court in *Bagley* v. *Washington Township Hospital Dist.*, 65 Cal.2d 499 [55 Cal.Rptr. 401, 421 P.2d 409], to determine if the government as employer could restrict First Amendment rights. The court in *Bagley* stated that the governmental agency, before it can restrict First Amendment rights, must demonstrate: "(1) that the political restraints rationally relate to the enhancement of the public service, (2) that the benefits which the public gains by the restraints outweigh the resulting impairment of constitutional rights, and (3) that no alternatives less subversive of constitutional rights are available." (See pp. 501-502.) This test was applied in *Finot* v. *Pasadena City Bd. of Education*, 250 Cal.App.2d 189, 199 [58 Cal.Rptr. 520], where the reviewing court, after holding a school teacher possessed a constitutional right to wear a beard, turned to a consideration of the degree of protection to which this right was protected.

Translated to the area of private employment, the *Bagley* test requires evidence (1) that the restraint upon the protected right rationally relates to the enhancement of the employer's business, (2) that the benefit to the employer outweighs the resulting impairment of constitutional rights, and (3) that no alternatives less subversive of constitutional rights are available. A finding that the *Bagley* test was not met would not necessarily mean that the private employer could not fire the employee but would mean that the Unemployment Insurance Appeals Board would have to find that the employee was discharged because of personal action which is constitutionally protected.

The Attorney General raises the specter of uncleanliness but there was no evidence that appellant's beard was unclean. There was also no evidence that beards per se are unclean or that the employer even thought beards were unclean. The employer did not require appellant to confine

his hair nor did the employer give appellant any alternative to shaving his beard. In fact, the employer did not appear at the hearing and thus there is an absence of any evidence as to why the beard was objectionable. In the absence of evidence relating to the factors *Bagley* directs should be considered, it is concluded that appellant's constitutional right was infringed by the employer.

The above conclusion raises the question of whether there is a "compelling state interest" involved which would justify the refusal of unemployment benefits. (*King* v. *Unemployment Ins. Appeals Bd., supra,* at p. 206; *Sherbert* v. *Verner,* 374 U.S. 398, 406-410 [10 L.Ed.2d 965, 971-974, 83 S.Ct. 1790].) The Attorney General advances two interests as compelling the denial of unemployment benefits. First, it is argued that the state has a compelling interest "in protecting the property of citizens who pay for a State administered program." The Attorney General considers it unfair that the employer should have the right to fire the employee but yet be penalized for exercising that right through a charge on his reserve fund.[1] *King* answered this by saying that "Such event, however, may be regarded as part of the price which the employer must pay for participating in an unemployment compensation system which is administered by the state and is, therefore, subject to the state's constitutional obligations; . . ." Furthermore, the unfairness argument is not persuasive. The private employer may have the right to fire the employee because the private employer is not ordinarily required to conform to the First Amendment. Applying the *Bagley* test will assure the private employer that if he discharges an employee and bears the burden of meeting this test not only may he fire the employee but also his reserve account will not be charged regardless of the fact that a First Amendment right was involved.

The Attorney General also argues that the state has a compelling interest in reducing unemployment. How this interest is served by denying unemployment benefits to the unemployed is not apparent. It would seem that the state by granting the benefit would more likely discourage employers from firing employees. Furthermore, presumably, some other unemployed but clean-shaven citizen will be hired to replace appellant and the extent of unemployment will be unchanged.

In any event, no evidence was produced before the lower court or the appeals board from which it could be determined that a compelling state interest was involved.

We do not feel that this case should be remanded to the appeals board

---

[1] The employer's right to fire is not tested in this case.

for a determination of issues raised by application of the *Bagley* test or to determine whether the state had any compelling interest in the matter. The employer had the opportunity to present evidence on these issues. Respondent makes no contention that there is any such evidence and there is no reason to prolong this litigation in the absence of any reason to believe it could be produced at a further hearing.

Appellant also argues that his conduct in refusing to shave his beard was not misconduct within the meaning of California Unemployment Insurance Code section 1256 which provides in part as follows: "An individual is disqualified for unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause or that he has been discharged for misconduct connected with his most recent work.

"An individual is presumed to have been discharged for reasons other than misconduct in connection with his work and not to have voluntarily left his work without good cause unless his employer has given written notice to the contrary to the director within five days after the termination of service, setting forth facts sufficient to overcome the presumption. If the employer files such notice, the question shall immediately be determined in the same manner as benefit claims."

The court in *Lacy* v. *Unemployment Ins. Appeals Bd.*, 17 Cal.App.3d 1128, 1132 [95 Cal.Rptr. 566], has discussed the criterion against which a charge of misconduct should be judged: "In the absence of other specifications, Labor Code section 2856 establishes the extent of an employee's duty to comply with his employer's instructions: 'An employee shall substantially comply with all the directions of his employer concerning the service on which he is engaged, except where such obedience is impossible or unlawful, or would impose new and unreasonable burdens upon the employee.'

"Another criterion is supplied by a decisional elaboration of the term 'misconduct' as used in unemployment insurance legislation. In *Maywood Glass Co.* v. *Stewart*, 170 Cal.App.2d 719, 724 [339 P.2d 947], the court adopted a definition originally formulated by the Supreme Court of Wisconsin, equating misconduct with 'conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, . . . [but not] mere inefficiency, unsatisfactory conduct . . . inadvertencies or ordinary negligence . . . .' "

There is no dispute that the order to shave his beard was a "new" burden upon appellant. The only testimony on this point was from appellant to the effect that his employer had no rules regarding beards and had allowed him to wear a beard for a period of time without comment. Labor Code section 2856, however, permits disobedience only when the burden is both "new and unreasonable."

An order to shave would be reasonable if motivated by evidence that the beard was detrimental to the employer's business interests or was unsanitary. The order to shave would be unreasonable if motivated solely by a personal distaste for the beard or if merely a ruse to fire the employee. There was no testimony from the employer as to why he fired the appellant. Since the presumption of section 1256 of the Unemployment Insurance Code is that the employee was *not* discharged for misconduct, the state of the evidence does not permit an inference that the order was reasonable.

The judgment is reversed.

Caldecott, J., concurred.

**DRAPER, P. J.**—I concur in the judgment, but only because of the abruptness of the discharge, apparently under a rule established by the employer only simultaneously with appellant's discharge. I should find it hard to follow *King* if the employee had wilfully violated an employment rule. To me, it is most difficult to find a state interest which would compel an employer, who rightfully discharges an employee for good cause, to nonetheless suffer financially because he properly discharged a recalcitrant employee. Yet the "state interest," which *King* so carefully preserves, is served only by charging the reserve account of the employer, thus increasing the amount he must pay. Here, however, the employer was not sufficiently interested to appear, and the record therefore requires the reversal.