935 P.2d 122

Larry K. KEANINI, Sr., Claimant–
Appellant,

v.

Lorraine H. AKIBA, Director of Labor and
Industrial Relations, State of Hawai'i,[1]
and Trans Hawaiian, Inc., Defendants–
Appellees.

· No. 18770.

Intermediate Court of Appeals of Hawai'i.

March 12, 1997.

Certiorari Denied April 4, 1997.

---

1. Lorraine H. Akiba (Akiba) succeeded Dayton M. Nakanelua (Nakanelua) as Director of Labor and Industrial Relations, State of Hawai'i, during the pendency of this action. Pursuant to Hawai'i Rules of Appellate Procedure Rule 43(c)(1), Akiba has been substituted automatically for Nakanelua in the instant case.

Mark Wangberg (Tom Parrish with him on the briefs, Legal Aid Society of Hawai'i), Wailuku, Maui, for claimant-appellant.

Frances E.H. Lum (Wilfredo Tungol with her on the brief, Deputy Attorneys General, State of Hawai'i), Honolulu, for defendant-appellee Director of Labor and Industrial Relations, State of Hawai'i.

Before BURNS, C.J., and WATANABE and KIRIMITSU, JJ.

KIRIMITSU, Judge.

In this unemployment benefits dispute, claimant-appellant Larry K. Keanini, Sr. (Claimant) appeals from the Second Circuit Court's February 10, 1995 judgment, which denied Claimant unemployment benefits on the basis that Claimant voluntarily left his employment without good cause. Claimant argues that: (1) the decision disqualifying Claimant improperly narrows the protective coverage of Hawai'i's unemployment laws; and (2) the decision is affected by an error of law regarding penalties for drivers of uninsured vehicles. We conclude that the appeals officer of the Department of Labor and Industrial Relations (DLIR) erred by applying the wrong test for determining when an

employee has voluntarily left work. We further conclude that Claimant did not voluntarily leave his work, but rather, was discharged. Therefore, we vacate the February 10, 1995 judgment of the circuit court denying Claimant unemployment benefits. We remand the case to the circuit court, with instructions that it likewise remand the case to the appeals officer of the Department of Labor and Industrial Relations for a determination of whether Claimant was discharged for misconduct connected with work and thus disqualified for unemployment benefits pursuant to HRS § 383–30(2) (1993).

## I. BACKGROUND

Claimant was employed as a bus driver for Trans Hawaiian, Inc. (Employer) from July 11, 1986 to July 22, 1993. In May 1993, while off duty, Claimant was stopped and cited for, among other charges, driving his car without no-fault insurance coverage. Claimant was subsequently convicted and his driver's license was suspended for three months, effective July 23, 1993.

On July 23, 1993, Claimant informed Employer that his license had been suspended. Since his driver's license was necessary for his job as a bus driver, Claimant volunteered to perform any other duties that Employer might have available. Employer did not, however, assign Claimant any duties after July 22, 1993. One month after being informed that Claimant's license was suspended, Employer sent a letter to Claimant stating that he was terminated from employment "effective immediately."

Claimant subsequently filed for unemployment benefits. The DLIR denied his application on the basis that Claimant voluntarily left employment without good cause. Claimant filed a request for Reconsideration and Appeal. After a hearing, the appeals officer

of the DLIR (Appeals Officer) issued a decision affirming the denial of benefits. Claimant next appealed to the Second Circuit Court, which also affirmed the denial of benefits. Claimant then filed the present appeal.

## II. STANDARD OF REVIEW

■ Appeal of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in Hawai'i Revised Statutes (HRS) § 91–14(g) (1993) [2] to the agency's decision. *University of Hawai'i Professional Assembly v. Tomasu*, 79 Hawai'i 154, 157, 900 P.2d 161, 164 (1995). Hence, the agency's findings of fact are reviewed under the clearly erroneous standard. *Wailuku Sugar Co. v. Agsalud*, 65 Haw. 146, 148, 648 P.2d 1107, 1110 (1982); HRS § 91–14(g)(5) (1993). "A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made." *State v. Okumura*, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995) (citation and internal quotation marks omitted). On the other hand, an agency's legal conclusions are freely reviewable. *Tate v. GTE Hawaiian Tel. Co.*, 77 Hawai'i 100, 102–03, 881 P.2d 1246, 1248–49 (1994). Hence, an agency's statutory interpretation is reviewed *de novo*.

## III. DISCUSSION

### A. *Claimant's First Argument*

Claimant first argues that the Appeals Officer was wrong in concluding that Claimant

**2.** Hawai'i Revised Statutes (HRS) § 91–14 (1993) provides, in relevant part:

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
> (1) In violation of constitutional or statutory provisions; or

> (2) In excess of the statutory authority or jurisdiction of the agency; or
> (3) Made upon unlawful procedure; or
> (4) Affected by other error of law; or
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

was disqualified from unemployment benefits on the basis that he left work voluntarily without good cause. We agree.

### 1. *The Appeals Officer's Decision*

Claimant's disqualification was based on HRS § 383–30(1) (1993), which provides that an individual shall be disqualified for unemployment benefits "for any week in which the individual has left his [or her] work voluntarily without good cause." *Id.* Additionally, under Hawai'i Administrative Rules (HAR) § 12–5–47(b), which was promulgated to implement HRS § 383–30(1), a "separation is a voluntary leaving or quitting when the facts and circumstances demonstrate that a claimant is the 'moving party' in the termination of an employment relationship."

The Appeals Officer's November 4, 1993 decision included, among others, the following findings:

> The claimant was aware that he was required to have a valid driver's license to maintain his employment with employer as a bus driver. Claimant was also aware that he needed car insurance in order to have a valid driver's license and that failure to maintain this insurance coverage could and would result in the loss of his valid driver's license. Despite this knowledge, claimant continued to operate his private vehicle without insurance, was arrested, convicted and consequently suffered the suspension of his driver's license. Claimant needed this license to continue operating the employer's vehicles and, with the loss of this license, employer had no other work for claimant as the company was undergoing a reduction in force. Claimant's voluntary actions lead [sic] to his license suspension, which resulted in the termination of his employment.

Based upon the above findings, the Appeals Officer concluded:

> The claimant, therefore, was the "moving party" in the termination of his employment relationship and voluntarily quit his job when his license was suspended.... Accordingly, the Appeals Officer finds that claimant voluntarily quit his job without good cause.

Hence, Claimant was denied unemployment benefits pursuant to HRS § 383–30(1).

The issue, then, is whether the Appeals Officer was correct in determining that Claimant was the moving party in the termination of his employment relationship and thus voluntarily left his job without good cause. The DLIR confirmed in oral argument that the Appeals Officer utilized the doctrine of constructive voluntary leaving [3] to come to her conclusion that Claimant was the moving party and thus voluntarily left his job. However, no Hawai'i appellate case has clearly addressed the issue of whether the doctrine is recognized in our jurisdiction.[4] Further, the circuit courts have disagreed on whether to apply the doctrine.[5] Hence, our review of the Appeals Officer's decision requires that we decide the viability of the doctrine in Hawai'i.[6]

---

**3.** The doctrine has also been referred to as "constructive quit," "constructive voluntary separation," "constructive voluntary quit," and "provoked discharge."

**4.** In *Hardin v. Akiba,* 84 Hawai'i 305, 311–13, 933 P.2d 1339, 1345–47 (1997), the Hawai'i Supreme Court discussed the doctrine of "constructive quit" or "provoked discharge." Because the doctrine was not implicated under the facts of *Hardin,* the court did not decide the doctrine's general applicability in this jurisdiction.

**5.** In *Ahuna v. Agsalud,* 87–1 Haw.Legal Rep. 87-0279 (3d Cir., Haw.1987), the court rejected the doctrine of constructive voluntary leaving. However, in *Akau v. John J. Harding Co., Ltd., and Ramil,* Civil No. 91–1713–05, 1st Cir., Haw.

March 24, 1992, the court appeared to utilize the doctrine to deny unemployment benefits.

**6.** Other states have split on the issue of whether to recognize the doctrine. States that recognize "constructive voluntary leaving" as a bar to unemployment compensation include: California— *Steinberg v. California Unemployment Ins. Appeals Bd.,* 87 Cal.App.3d 582, 151 Cal.Rptr. 133 (1978); Michigan—*Echols v. Michigan Employment Sec. Comm.,* 380 Mich. 87, 155 N.W.2d 824 (1968); New Jersey—*Yardville Supply Co. v. Board of Review, Dept. of Labor,* 114 N.J. 371, 554 A.2d 1337 (1989); New York—*In re Paladino,* 202 A.D.2d 932, 609 N.Y.S.2d 694 (1994); and Massachusetts—*Olmeda v. Director of the Div. of Employment Sec.,* 394 Mass. 1002, 475 N.E.2d 1216 (1985).

States that have rejected "constructive voluntary leaving" as a bar to unemployment compen-

### 2. The Doctrine of Constructive Voluntary Leaving

We begin our analysis with a brief explanation of the doctrine of "constructive voluntary leaving." The doctrine is generally understood to be a concept whereby an employee who acts in a way which might result in his discharge, and does in fact result in his discharge, is deemed to have left his employment without good cause—thereby losing the right to claim unemployment benefits. *Echols v. Michigan Employment Sec. Comm.*, 380 Mich. 87, 155 N.W.2d 824 (1968). Under the doctrine, the employee's actual intent to terminate the employment is not relevant. What is relevant is the foreseeability of termination resulting from the conduct. A typical definition is found in *Steinberg v. California Unemployment Ins. Appeals Bd.*, 87 Cal.App.3d 582, 151 Cal.Rptr. 133 (1978):

> A claimant is said to have constructively quit his [or her] job when, although discharged by the employer, the claimant ... set in motion the chain of events which resulted in the employer's having no choice except to terminate him [or her]. All three of the following elements must be present before it can be said that a claimant has constructively quit his [or her] job.
>
> 1. The claimant voluntarily committed an act which
>
> 2. made it impossible for the employer to utilize his [or her] services, and
>
> 3. the claimant knew or reasonably should have known that the act would jeopardize his [or her] job and possibly result in the loss of his [or her] employment.

*Id.* at 585, 151 Cal.Rptr. at 134–35.

### 3. We Reject "Constructive Voluntary Leaving" in Hawai'i

We reject the doctrine as a basis for disqualification from unemployment benefits under HRS § 383–30(1) for three reasons. First, the rules of statutory construction indicate that the "left work voluntarily" provision of HRS § 383–30(1) is incompatible with the doctrine. Second, the doctrine is based on foreseeability, not intent. As will be discussed, our court in *Ipsen v. Akiba*, 80 Hawai'i 481, 911 P.2d 116 (App.1996), made it clear that intent is required for a voluntary leaving. Finally, policy considerations support our rejection of the doctrine.

### a. Statutory Construction of HRS § 383–30(1) and HAR § 12–5–47(b).

Our supreme court has noted that

> [t]he interpretation of a statute is a question of law reviewable *de novo*. In so doing, our primary duty in interpreting and applying statutes is to ascertain and give effect to the legislature's intention to the fullest degree. Although the intention of the legislature is to be obtained primarily from the language of the statute itself, we have rejected an approach to statutory construction which limits us to the words of a statute, for when aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination. Thus, the plain language rule of statutory construction ... does not preclude an examination of sources other than the language of the statute itself even when the language appears clear upon perfunctory review. Were this not the case, a court may be unable to adequately discern the underlying policy which the legislature seeks to promulgate and, thus, would be unable to determine if a literal construction would produce an absurd or unjust result, inconsistent with the policies of the statute.

*Sato v. Tawata*, 79 Hawai'i 14, 17, 897 P.2d 941, 944 (1995) (citations, brackets, quotation marks, and ellipses omitted).

Additionally,

> the general principles of construction which apply to statutes also apply to administrative rules. As in statutory

sation include: Maryland—*Department of Economic and Employment Dev. v. Taylor*, 108 Md. App. 250, 671 A.2d 523, *cert. granted* 343 Md. 332, 681 A.2d 68 (1996); Maine—*Brousseau v. Maine Employment Sec. Comm.*, 470 A.2d 327 (Me.1984); Connecticut—*Lewis v. Administrator, Unemployment Compensation Act*, 39 Conn.Supp. 371, 465 A.2d 340 (1983); and Vermont—*Przekaza v. Department of Employment Sec.*, 136 Vt. 355, 392 A.2d 421 (1978).

construction, courts look first at an administrative rule's language. If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning.

*International Bhd. of Elec. Workers, Local 1357 v. Hawaiian Tel. Co.*, 68 Haw. 316, 323, 713 P.2d 943, 950 (1986) (citations omitted).

 Moreover, an administrative agency's interpretation of its own rules is entitled to "deference unless it is plainly erroneous or inconsistent with the underlying legislative purpose." *Id.*

First, we examine the plain language of the statute. The provision is relatively straightforward. The statute · disqualifies claimants from receiving benefits if "the individual has left work voluntarily without good cause[.]" HRS § 383–30(1). HAR § 12–5–47(b) further explains that "[a] separation is a voluntary leaving or quitting when the facts and circumstances demonstrate that a claimant is the 'moving party' in the termination of an employment relationship."

 We believe the plain language of the statute and rule disqualifies persons who depart their employment by their own free choice; it does not automatically disqualify persons who simply commit a voluntary antecedent act that ultimately results in termination. Therefore, the issue of whether an employee is the "moving party in the termination of the employment relationship" and has "left work voluntarily" hinges on the employee's intent to end the employment relationship. Support for this interpretation is found in *Gaspro, Ltd. v. Commission of Labor and Indus. Relations*, 46 Haw. 164, 172, 377 P.2d 932, 936 (1962), where the supreme court stated that leaving work voluntarily means "the volitional severance of the employment relation by the worker."

Because the concept of constructive voluntary leaving is based on foreseeability of discharge, not intent to terminate employ-

ment, the concept is incompatible with our interpretation of HRS § 383–30(1).

b. *Prior Case Law.*

Second, in *Ipsen v. Akiba*, 80 Hawai'i 481, 911 P.2d 116 (App.1996), we wrestled with the question of determining when a person has left work voluntarily without good cause. We adopted an approach in which the issues of voluntariness and good cause are evaluated separately by expressing our general assent with the following statement:

> The notion of voluntary quitting without good cause involves two levels of volition: (1) the immediate circumstances of leaving must reflect a subjective [7] intent of the employee to terminate; and (2) the act of leaving must be an exercise of free will and not the product of other compelling reasons or pressures forcing him [or her] to leave. It is the second level of volition that concerns the ultimate issue of whether or not the employee has quit for good cause.

*Id.* (citing David R. Packard, *Unemployment Without Fault; Disqualification for Unemployment Insurance Benefits*, 17 Vill.L.Rev. 635, 641 (1972) (footnote added)).

We noted, however, that because HAR § 12–5–47(b) refers to the "facts and circumstances" surrounding the termination, a proper evaluation of the claimant's subjective intent to terminate his or her employment can be based upon both subjective and objective evidence. *Id.* at 486 n. 8, 911 P.2d at 121 n. 8.

HAR § 12–5–47(b) states that when a claimant is the "moving party in the termination of an employment relationship" that separation is a voluntary leaving. *Ipsen*, however, instructs that a voluntary leaving requires that the facts and circumstances reflect the employee's intent to terminate the employment relationship. Logically, we now hold that to be the moving party in the termination of an employment relationship, the facts and circumstances must show that the party had the intent to terminate the employment relationship.

---

**7.** Under Hawai'i Administrative Rules (HAR) § 12–5–47(b), we would not be limited to subjective evidence of intent.

Because the concept of constructive voluntary leaving is based on foreseeability, not intent by the employee to terminate the employment relationship, we believe the concept is inconsistent with our interpretation of "moving party" and "voluntary leaving."

### c. Policy Considerations.

Finally, we address the policy considerations pertinent to our decision.

In *Camara v. Agsalud,* 67 Haw. 212, 685 P.2d 794 (1984), the Hawai'i Supreme Court stated:

> The unemployment compensation statute was enacted for the beneficent and humane purpose of relieving the stress of economic insecurity due to unemployment. It should therefore be liberally construed to promote the intended legislative policy. In view of the basic policy of the statute of protecting the worker from the hazard of unemployment, our courts must view with caution any construction which would narrow the coverage of the statute and deprive qualified persons of the benefits thereunder.

*Id.* at 216–17, 685 P.2d at 797 (citations omitted).

■ The provisions in question, HRS § 383–30(1) and HAR § 12–5–47(b), are used to disqualify claimants from receiving benefits. We must narrowly construe such provisions. *Department of Economic and Employment Dev. v. Taylor,* 108 Md.App. 250, 268, 671 A.2d 523, 532, *cert. granted,* 343 Md. 332, 681 A.2d 68 (1996). Because our rejection of constructive voluntary leaving restricts the scope of the statute and rule, it certainly qualifies as a narrow construction.

The DLIR argues that awarding benefits to claimants whose unemployment arises out of their voluntary, illegal actions is poor policy. The problem with their argument is that it is addressed to the wrong branch of government. The statute simply does not admit to an interpretation allowing disqualification of claimants who are discharged because of a voluntary act not amounting to misconduct connected with work. We must view the law

as it is, and not as we might wish it to be. Recognizing the doctrine of constructive voluntary leaving would require us to rewrite the statute to add a new disqualification provision that the legislature did not see fit to include. For us to do so would cross the proper boundaries of judicial decision-making and would constitute judicial law-making.

■ For the foregoing reasons, we hold that for an employee to be the "moving party in the termination of the employment relationship" and to therefore have "left work voluntarily," the facts and circumstances must indicate that employee had the intent to terminate the employment relationship. Furthermore, we reject the doctrine of "constructive voluntary leaving" as a basis for disqualification from unemployment benefits under HRS § 383–30(1).

### 4. Claimant Did Not Voluntarily Leave Work

■ In the instant case, there is no evidence that Claimant ever had the intent to terminate his employment. Therefore, Claimant was not the moving party in the termination of the employment relationship and did not voluntarily leave work. In fact, Employer acknowledged at the hearing that after Claimant notified Employer of his driver's license suspension, Claimant stated his willingness to undertake any other duties that Employer had available. The Appeals Officer, unfortunately, made no findings regarding Claimant's intent because she utilized the doctrine of constructive voluntary leaving to conclude that Claimant was the moving party. Because the undisputed evidence on the record indicates that Claimant did not take any action with the intent that such action result in his employment termination,[8] we hold that the conclusion of law that Claimant "was the 'moving party' in the termination of his employment relationship and voluntarily quit his job when his license was suspended" is wrong. Consequently, the conclusion of law that Claimant was ineligible

---

**8.** HAR § 12–5–51 states that, "[a] discharge occurs when an employer is the 'moving party' in the termination of the employment relationship." HAR § 12–5–51(a).

for unemployment benefits *on this basis* is also wrong.[9]

### 5. *Claimant Was Discharged*

■■ According to the Hawai'i Administrative Rules, "[a] discharge occurs when an employer is the 'moving party' in the termination of the employment relationship." HAR § 12–5–51(a). As we stated earlier, to be the moving party in the termination of an employment relationship, the facts and circumstances must show that the party had the intent to terminate the employment relationship.

After giving notice that his license had been suspended and volunteering to perform duties other than driving, Claimant remained unsure of his employment status. One month later, he received a letter from Employer stating that he was terminated from employment "effective immediately." This letter indicated Employer's intent to terminate the employment relationship. Consequently, we hold that Claimant was discharged by Employer.

### 6. *Misconduct Connected With Work*

No inquiry was ever made, however, as to whether Claimant should have been barred from unemployment benefits under HRS § 383–30(2), which excludes persons "discharged for misconduct connected with work." Therefore, without expressing any opinion on whether Claimant's actions amounted to misconduct connected with work, we remand this case to the circuit court, with instructions that it likewise remand the case to the Appeals Officer for a determination of whether Claimant should

have been disqualified from benefits under HRS § 383–30(2).

### B. *Claimant's Second Argument*

Because of our disposition on Claimant's first argument, we find it unnecessary to address Claimant's second point on appeal asserting an error of law regarding the penalties for drivers of uninsured vehicles.

### IV. *CONCLUSION*

For the aforesaid reasons, we vacate the February 10, 1995 judgment of the circuit court denying Claimant unemployment benefits. We remand the case to the circuit court, with instructions that it likewise remand the case to the appeals officer of the Department of Labor and Industrial Relations for a determination of whether Claimant was discharged for misconduct connected with work and thus disqualified for unemployment benefits pursuant to HRS § 383–30(2) (1993).

---

**9.** As we discuss in a later section, we are remanding this case for a determination of whether

Claimant was discharged for misconduct connected with work. HRS § 383–30(2) (1993).