**The PALISADES CITIZENS ASSOCIATION, Petitioner,**

v.

**DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD, Respondent,**

**Foxhall Beverage Ltd., Intervenor.**

**No. 7151.**

District of Columbia Court of Appeals.

Argued Dec. 19, 1973.

Decided Aug. 26, 1974.

---

John Wm. Mannix, Washington, D. C., for petitioner.

Earl A. Gershenow, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Nelson Deckelbaum, Washington, D. C., for intervenor.

Before PAIR, YEAGLEY and HARRIS, Associate Judges.

YEAGLEY, Associate Judge:

This petition seeks review of an order of the Alcoholic Beverage Control Board (Board) which, after a protest hearing,[1] approved the transfer of a class "A" liquor license to Foxhall Beverage, Ltd. (Foxhall)[2] from Mt. Pleasant Liquors, Inc.

On November 24, 1972, Foxhall filed an application with the Board to transfer the license to it. The application was protested by petitioner and a hearing was held on December 21, 1972, before the Board, which, at that time, was composed of only two members, Julian Dugas and Rufus Peckham. Normally the Board consists of three members[3] but at the time one vacancy existed.

On December 29, 1972, petitioner sent a letter to the Board attacking the validity of a supporting petition which Foxhall had submitted to the Board, claiming that misrepresentations had been made in connection with obtaining some of the signatures on the petition. On the same date, Board member Peckham wrote to Foxhall's attorney enclosing a copy of petitioner's letter. Peckham stated that the allegations "could

---

1. D.C.Code 1973, §§ 25–115(b), 25–117.

2. In its order the Board found that the "premises . . . [were] appropriate for transfer and issuance of the license desired and the same may issue upon compliance by the applicant with all remaining requirements of this and other appropriate municipal agen-

cies." There is no question that this is the final order of the Board and that the actual issuance of the license is a purely ministerial act.

3. D.C. Commissioner's Order No. 72–206, dated August 8, 1972 (D.C.Code 1973, Title I Appendix at 267).

well have a bearing on the ultimate disposition of the application." He further stated that "we [the Board] . . . would appreciate any reply or rebuttal thereto that you care to make on behalf of the applicants."

On December 31, 1972, Board member Peckham's resignation became effective.

On January 2, 1973, Foxhall's attorney wrote to the Board responding to petitioner's allegations. That letter included an affidavit, sworn to by the officer and director of Foxhall who obtained the signatures on the petition, denying all claims of misrepresentation.

On January 3, 1973, petitioner wrote to the Board responding to Foxhall's letter of January 2, and asked that the Board grant a further hearing on the application so that the circumstances surrounding the obtaining of the signatures on the petition could be explored.

On January 11, 1973, Julian Dugas, chairman of the Board, wrote to petitioner and stated that the Board considered petitioner's letters of December 29th and January 3rd to be petitions for reconsideration. The letter stated that "until a final order is entered by the Board in this matter such petitions are premature."

On January 16, 1973, petitioner wrote to the Board advising that on January 15, 1973, petitioner had received a copy of the Board's decision dated December 29, 1972, and noting that the decision had been "promulgated" on January 11, 1973. We find nothing in the record regarding the date of promulgation that is conclusive of the issue as discussed *infra*.

On January 16, 1973, the newly constituted Board denied, without opinion or findings, petitioner's request for reconsideration.

■ Petitioner sets forth several claims of error which do not warrant extended comment. First we find no denial of due process in the Board's scheduling of its hearing on December 21, 1972, even assuming that the members had knowledge that one of its two members would be resigning on December 31, 1972. Neither do we find meritorious petitioner's claim that the Board reneged on its alleged promise to keep the record open through December 29, 1972. The only record reference which we find in this regard, indicates quite conclusively that petitioner declined an offer by the Board to keep the record open. As to petitioner's claim that the Board's denial of its petition for rehearing or reconsideration was invalid because it contained no findings, we note that neither the Board's rules nor the District of Columbia Administrative Procedure Act (D.C.Code 1973, § 1–1501 et seq.) require findings for dispositions of petitions for reconsideration.

■ Petitioner also claims that the Board's decision was invalid because it was issued at a time when there were two vacancies on the Board leaving only one member to transact its business. District of Columbia Commissioner's Order No. 72–206, dated August 8, 1972, (D.C.Code 1973, Title I Appendix at 267) provides that: "A quorum shall consist of any two members." It is petitioner's position, and we agree, that any decision of the Board, to be valid, must be made by at least two members. Petitioner claims that the Board's decision in this case was issued on January 11, 1973, and that on that date (and in fact from December 31, 1972, until January 16, 1973) the Board, having only one member, did not have a quorum for the transaction of business.

We have carefully examined the record to determine when the Board's decision was "issued". The decision is dated December 29, 1972, and is signed by Board members Dugas and Peckham. Aside from this date on the document itself there is no evidence of when it was actually issued. The Board, in response to a motion by petitioner to this court for augmentation of the record with the minutes of executive sessions of the Board held on December

29, 1972, January 11, 1973, and February 12, 1973, advises us that no minutes are kept of executive sessions. On this state of the record, and without evidence to the contrary, we might presume that the decision was issued on the date which appears thereon. There is in the record, however, evidence which indicates that on December 29, 1972, and on January 11, 1973, no final order had yet been issued. The letters written by Board member Peckham to petitioner on December 29, 1972, and the letter written by Board member Dugas on January 11, 1973, are both incompatible with the existence, on those dates, of a final order of the Board.

As the Supreme Court said in Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 676, 70 S.Ct. 876, 881, 94 L.Ed. 1194 (1950), with respect to when an order of an agency may be deemed to have been issued:

> Of course, the Commission has considerable administrative discretion to decide when an order may fairly be deemed to have been "issued." . . . But surely a certificate cannot be said to have been issued for purposes of defining rights and the seeking of reconsideration by an aggrieved person if its substance is merely in the bosom of the Commission. Knowledge of the substance must to some extent be made manifest. . . .

The record is unclear as to when "knowledge of the substance" of the Board's order was made manifest. D.C. Code 1973, § 1–1509(e) provides that a copy of an agency order shall be given to each party. The only record evidence we have as to when a copy of the order was given to the parties is the January 16, 1973, letter from petitioner to the Board which refers to its receipt of the Board's order on January 15, 1973.

On the basis of the record as it is now constituted, we cannot sustain the Board's decision. However, we cannot say for certain that the order was improperly issued. Further, the defect, if any, was in no way the responsibility of Foxhall, which has been operating the store in question in a good faith belief that its license had been validly issued. Accordingly, the case is remanded so the Board may enlarge the record in this regard (by hearing or otherwise, in accordance with its rules) and to make findings thereon as to whether a quorum existed at the time the Board's order was adopted and issued and for such other action as may be appropriate. The Board should keep in mind that "issuance" requires public knowledge of the substance of the order. If the Board is unable to provide factual support for a determination that its order was validly issued, it should promptly hold a further hearing on the application in order to determine the relevant facts. During the pendency of this proceeding and until further order of the Board the license of Foxhall shall remain valid.

So ordered.