80 P.3d 984

**NIHI LEWA, INC., Petitioner–Appellant,**

v.

**DEPARTMENT OF BUDGET AND FIS-CAL SERVICES, City and County of Honolulu, Respondent–Appellee.**

**No. 23047.**

Supreme Court of Hawai'i.

Dec. 12, 2003.

... file a certificate to that effect with the clerk of the court appealed from...."

David F. E. Banks and Marc E. Rousseau (of Cades Schutte Fleming & Wright), on the briefs, Honolulu, for petitioner-appellant.

Cynthia M. Nojima, Deputy Corporation Counsel, on the briefs, Honolulu, for respondent-appellee.

MOON, C.J., LEVINSON, and NAKAYAMA, JJ., and Circuit Judge BLONDIN, Assigned by Reason of Vacancy.

Opinion of the Court by MOON, C.J.

Petitioner-appellant Nihi Lewa, Inc. (Nihi Lewa) seeks judicial review of the December 17, 1999 dismissal order of the Office of Administrative Hearings, Department of Commerce and Consumer Affairs, which denied Nihi Lewa's request for administrative review. Nihi Lewa contends that the hearings officer erred in (1) dismissing its request for review as untimely under Hawai'i Revised Statutes (HRS) § 103D–712(a) (Supp.1999) [1] and (2) finding that it lacked jurisdiction over the matter because Nihi Lewa had failed to file its request directly with the Office of Administrative Hearings (hearings office). For the reasons discussed below, we affirm the order of dismissal.

## I. BACKGROUND

Respondent-appellee Department of Budget and Fiscal Services, City and County of Honolulu (the purchasing agency) apparently advertised job number 11–99, contract number F–96730, Waipahu Wastewater Pump Station Modifications (the contract) for public bid. On October 28, 1999, the sealed bids submitted for the contract were opened. RCI Environmental, Inc. (RCI) submitted the lowest "basic bid" at $5,027,645.50. Nihi Lewa submitted the second lowest "basic bid" at $5,364,835.00.

On November 2, 1999, Nihi Lewa filed a protest with Roy K. Amemiya, Jr., the director of the purchasing agency (director). Therein, Nihi Lewa complained that the value of RCI's plumbing work was greater than one percent of its total bid and that, therefore, RCI was required to list a "C–37 licensed plumber." Because RCI failed to list

1. Quoted *infra*. *See* Section III. Discussion.

such a plumber, Nihi Lewa asserted that RCI's bid should have been rejected. *Cf. Okada Trucking Co., Ltd. v. Board of Water Supply,* 97 Hawai'i 450, 460–62, 40 P.3d 73, 83–85 (2002) (explaining that, pursuant to HRS § 444–9 (1993), a general contractor may not perform specialty plumbing work without a proper license).

In a letter, dated November 23, 1999, the director denied Nihi Lewa's protest. The letter was, sent via certified mail, return receipt requested, and the envelope was postmarked November 29, 1999. Nihi Lewa's president signed for and received the denial letter on December 2, 1999.

On December 3, 1999, Nihi Lewa hand-delivered a request for . an administrative hearing (the request) to the purchasing agency's director. By letter dated December 6, 1999, the purchasing agency transmitted the request to the hearings office, which was received on December 8, 1999. A pre-hearing conference was scheduled for December 17, 1999, and the hearing was scheduled for December 21, 1999.

Approximately forty-five minutes before the pre-hearing conference was scheduled to commence, the hearings officer dismissed Nihi Lewa's request for administrative review on two grounds. First, the hearings officer determined that the request had been sent to the incorrect office:

> [The] mandatory language in the statute is clear as to the time, place, and manner of filing requests for administrative review-such as that attempted by [Nihi Lewa]. The record, however, is equally clear that [Nihi Lewa] has not complied with the requirement that such requests "shall be made directly to the office of administrative hearings [.]"

(Emphasis in original.) Second, he concluded that the appeal was untimely:

> [T]he request was not made within the seven calendar days required by that statute [ (HRS § 103D–712(a)) ]. The record reflects that the [purchasing agency] issued its decision denying [Nihi Lewa's] protest on November 23, 1999, and yet the ... **request was not made until 10 days later** on December 3, 1999. Once again, the statute is clear in requiring that such

requests be made "within seven calendar days of the <u>issuance</u> of a written determination" rather than specifying either the date of mailing or date of receipt to be the time from which the seven calendar days begins to run.

(Underscored emphasis in original.) (Bold emphasis added.) (Citations omitted.)

On December 21, 1999, Nihi Lewa filed a motion to set aside the dismissal and requested a new hearing. By letter dated December 23, 1999, the hearings officer denied the motion on the ground that the hearings office lacked jurisdiction over the matter, stating: "it is questionable whether *this forum* now has jurisdiction to hear your current motion in a case that has already been dismissed." (Emphasis in original.) On December 23, 1999, Nihi Lewa filed an application for judicial review with this court.

It is undisputed that the contract was eventually awarded to RCI.

## II. *STANDARD OF REVIEW*

When reviewing decisions of an administrative hearings officer based upon Hawai'i's Public Procurement Code, the appellate standard of review is governed by HRS § 103D–710(e) (1993). HRS § 103D–710(e) provides:

> Upon review of the record the court may affirm the decision of the hearings officer issued pursuant to section 103D–709 or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if substantial rights may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the chief procurement officer or head of the purchasing agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Furthermore,

conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and the Hearings Officer's exercise of discretion under subsection (6). Accordingly, a reviewing court will reverse a Hearings Officer's finding of fact if it concludes that such ... finding is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. On the other hand, the Hearings Officer's conclusions of law are freely reviewable.

*Southern Foods Group, L.P. v. State*, 89 Hawai'i 443, 452, 974 P.2d 1033, 1042 (1999) (brackets and citations omitted).

### III. DISCUSSION

HRS § 103D–712(a) provides that "[r]equests for administrative review under section 103D–709 *shall be made directly to the office of administrative hearings* of the department of commerce and consumer affairs *within seven calendar days of the issuance of a written determination* under section 103D–310, 103D–701, or 103D–702." (Emphases added.) Nihi Lewa contends that "the 'issuance' date of the agency's decision intended by the Legislature [is] the *date of receipt.*" (Emphasis added.) The purchasing agency asserts that the date of "issuance" should be construed as meaning, at the latest, the date on which the decision was mailed.[2] We agree with the purchasing agency.

Generally, this court is required to construe the words of a statute according to "their most known and usual signification[.]" HRS § 1–14 (1993). A standard dictionary definition of the term "issuance" notes that the term refers to "the act of issuing." *The Random House College Dictionary* 710

(rev'd ed.1975). In turn, the primary definition of "issue" is "the act of sending out or putting forth; promulgation; distribution." *Id.* This general definition of the relevant term also comports with the meaning of the term as it is technically used in the law. *See Black's Law Dictionary* 830 (6th ed. 1990) (Giving as its first definition: "To send forth; to emit; to promulgate; as, an officer issues orders, process issues from a court.").

■ HRS § 103D–712(a) establishes the "date of issuance" as the triggering mechanism that starts the clock running on the time for filing a request for administrative review. However, in the absence of a precise definition, it is unclear as to when the written determination should be considered to have been "sent forth, promulgated or distributed." The date of issuance could reasonably be understood to mean the date on which the written determination is finalized and adopted, the date on which it is rendered public, or the date on which it is mailed to the affected parties. Given this ambiguity, it is appropriate to resort to extrinsic aids in order to ascertain and give effect to the intention of the Legislature. This does not mean, however, that, in construing a disputed term, we should lightly disregard the ordinary meaning that attaches to it. *See Keliipuleole v. Wilson*, 85 Hawai'i 217, 221, 941 P.2d 300, 304 (1997) ("Words are given their common meaning unless some wording in the statute *'requires* a different interpretation.' " (quoting *Saranillio v. Silva*, 78 Hawai'i 1, 10, 889 P.2d 685, 694 (1995)) (citing *Ross v. Stouffer Hotel Co. (Hawai'i), Ltd.*, 76 Hawai'i 454, 461, 879 P.2d 1037, 1044–45 (1994)) (emphasis added)). Nor can we, under the guise of applying standard rules of statutory construction, thwart the intent of the Legislature.

■ It is well-settled that, when faced with the task of interpreting ambiguous statutory language, this court should "accord persuasive weight to the construction given words of broad and indefinite meaning by the

---

**2.** Specifically, the purchasing agency argues:

The decision was "issued" when it was made final and signed or at latest, the decision was "issued" when it was sent out. Certainly, at that point in time, the decision was finally made. The record indicates that the decision was postmarked on November 29, 1999. Therefore, at latest, the decision was "issued" on that day.

agency charged with the responsibility of carrying out the mandate of the statute in question, unless the construction is palpably erroneous." *Aio v. Hamada*, 66 Haw. 401, 410, 664 P.2d 727, 733 (1983) (citing *Treloar v. Swinerton & Walberg Co.*, 65 Haw. 415, 424, 653 P.2d 420, 426 (1982)); *see also In re Water Use Permit Applications*, 94 Hawai'i 97, 144–45 & n. 44, 9 P.3d 409, 456–57 & n. 44 (2002). The United States Supreme Court acknowledged as much in *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), when it recognized that "the Commission has considerable administrative discretion to decide when an order may fairly be deemed to have issued." [3] *Skelly Oil Co.*, 339 U.S. at 676, 70 S.Ct. 876.

In the instant case, the hearings officer utilized November 23, 1999—the date of the denial letter—as the triggering date for calculating the prescribed period. In our view, construing "issuance" to mean the date of the denial letter is palpably erroneous inasmuch as the prescribed period could conceivably expire before a written determination is made public. More to the point, however, is that such a construction would be, pursuant to the reasoning in *Skelly Oil Co.*, unconstitutional. Thus, as a matter of law, the date of issuance cannot be interpreted as meaning the date on which a written determination is signed by the director.

■ On appeal, Nihi Lewa maintains that "issuance" is merely a synonym for "receipt." We disagree. The two concepts designated by these terms (*i.e.*, to send and to receive) are distinct, denoting the beginning and end points of the delivery process. We are, instead, persuaded by the purchasing agency's interpretation that "issuance" means the date of mailing, as evidenced by the postmark date. Such interpretation is consistent with the ordinary meaning of the term and more accurately reflects the Legislature's intent. The legislative history supports the conclusion that the Legislature intended the time for filing to start at the beginning, rather

than the end, of the delivery process because it expressly utilized the term "issuance" rather than the term "receipt." The applicable provision of the American Bar Association's Model Procurement Code for State and Local Governments (Model Code) (February 1979) specifically suggests that the relevant time period be measured from the date of "receipt." Model Code § 9–506(2)(b) ("the aggrieved person shall file an appeal within [seven] days of *receipt* of a decision") (brackets in original) (emphasis added). The Hawai'i Public Procurement Code is based, in part, on the Model Code. *See* Stand. Comm. Rep. S8–93, in 1993 Senate Journal, at 39. However, instead of merely replicating the language from the Model Code, as it had done elsewhere, the Legislature drafted a substantively different statute that makes the date of issuance the operative date. Based upon the differences between the Model Code and HRS § 103D–712, one may reasonably infer that the Legislature considered establishing the date of receipt as an appropriate triggering mechanism, but ultimately rejected this alternative in favor of the date of issuance.

■ It was within the prerogative of the Legislature to decide that the time for filing a request for administrative review should begin running sooner rather than later. The overall framework of the Hawai'i Public Procurement Code indicates that the Legislature intended to create an expeditious process for resolving disputes over the awarding of contracts. *See CARL Corp. v. State*, 85 Hawai'i 431, 453, 946 P.2d 1, 24 (1997) ("the [Procurement] Code both shortens deadlines for filing protests and applications for review and expedites the administrative hearings process"). Under most circumstances, public projects cannot proceed while a protest is pending. *See* HRS § 103D–709(e) (1993) ("No action shall be taken on . . . an award of a contract while a proceeding is pending[.]"). Given that disputes over the award of contracts will necessarily result in delays that

---

3. We note that the Commission's own Rules of Practice and Procedure provided that: "In computing any period of time involving the date of issuance of an order by the Commission, the day of issuance of an order shall be the day the Office of the Secretary mails or delivers copies of the order (full text) to the parties or their attorneys of record, or makes such copies public, whichever be the earlier." *Skelly Oil Co.*, 339 U.S. at 676 n. 1, 70 S.Ct. 876.

will affect public works and, given that the Legislature expressed a clear intent to expedite the process by which such disputes are resolved, "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it," HRS § 1–15 (1993), support the purchasing agency's construction of the term "issuance" to mean the date on which a written determination is mailed, as evidenced by the postmark. Using the date of mailing as the triggering mechanism (1) creates an easily verifiable way of establishing the filing deadline (*i.e.*, counting from the date of postmark), (2) reduces the potential for delay that might arise if the party authorized to receive the written determination is unavailable when actual delivery is made, and (3) is in harmony with other provisions of the legislative scheme. *See, e.g.,* Hawai'i Administrative Rules § 3–126–74 (providing that service of a hearings officer's decision "shall be deemed complete upon its mailing to the party's last known address").

■ Moreover, it is well-settled that "[s]tatutory construction dictates that an interpreting court should not fashion a construction of statutory text that . . . creates an absurd or unjust result." *Dines v. Pacific Ins. Co., Ltd.,* 78 Hawai'i 325, 337, 893 P.2d 176, 188 (1995) (citation omitted). The facts of this case do not indicate that construing the term "issuance" to mean the date of mailing, as evidenced by the postmark, leads to an absurd or unjust result.

■ The record in this case clearly reflects that the letter denying Nihi Lewa's protest was dated November 23, 1999 and mailed on November 29, 1999, as evidenced by the postmark. Thus, Nihi Lewa's request for an administrative hearing was required to be filed with the hearings office no later than December 6, 1999. The record also indicates that Nihi Lewa received a copy of the denial letter on December 2, 1999—four days before the request for review would have been due. Although Nihi Lewa's written request was hand-delivered on December 3, 1999, it was presented to the purchasing agency

rather than the hearings office, in direct contravention of HRS § 103D–712(a). In turn, the hearings office did not receive the request until December 8, 1999. Thus, it appears that the untimeliness of Nihi Lewa's request has less to do with the date on which Nihi Lewa received the denial letter and more to do with Nihi Lewa's failure to comply with the filing mandate of the statute. Clearly, had the December 3, 1999 request been filed directly with the hearings office instead of the purchasing agency, it would have been timely. In our view, construing "issuance" to mean "date of mailing" does not lead to an absurd or unfair result merely because such an interpretation reduced the amount of time in which it was possible to correct an oversight that could easily have been avoided.

Based on the foregoing, we hold that the term "issuance" as used in HRS § 103D–712(a) means the date of mailing, as evidenced by the postmark. Because Nihi Lewa's request was not received by the proper office until two days after the December 6 deadline, the request was untimely. Consequently, we need not address Nihi Lewa's second contention on appeal.

## IV. CONCLUSION

In light of the above, we affirm the hearings officer's December 17, 1999 order of dismissal. *See Agsalud v. Lee,* 66 Haw. 425, 430, 664 P.2d 734, 738 (1983) (" 'Where the decision below is correct it must be affirmed by the appellate court though the lower tribunal gave a wrong reason for its action.' " (Citations and internal brackets omitted.)).

ACOBA, J., dissents.

Dissenting Opinion of ACOBA, J.

I would hold that the provision in Hawai'i Revised Statutes (HRS) § 103D–712(a)[1] (Supp.1999) of the Hawai'i Public Procurement Code, which requires that a request for administrative review of the decision of

1. HRS § 103D–712(a) states that
   [r]equests for administrative review under section 103D–709 shall be made directly to the office of administrative hearings of the department of commerce and consumer affairs within seven calendar days of the issuance of a written determination under section 103D–310, 103D–701, or 103D–702.

the head of a purchasing agency regarding a contract award "shall be made directly" with the Office of Administrative Hearings, Department of Commerce and Consumer Affairs, State of Hawai'i (Office of Administrative Hearings), is directory and not mandatory.

I would also hold that the requirement in HRS § 103D–712(a) that all requests for administrative review be filed "within seven calendar days of the issuance of a written decision" by the director of the purchasing agency must be construed to mean seven days after *receipt* of the decision by the protesting bidder in order to avoid an unreasonable, unjust, and absurd result. For, if measured by the date its director's decision was issued, as Respondent–Appellee Department of Budget and Fiscal Services, City and County of Honolulu (Appellee) argues, the time allowed for requesting a review may run before a bidder receives the decision, as in this case. Similarly, adopting the date of mailing as evidenced by the postmark as the date of the decision's issuance, as the majority holds, would also invite unreasonable, unjust, and absurd results. The decision in this case was mailed to Petitioner–Appellant Nihi Lewa, Inc. (Appellant) return receipt requested, evidencing that the seven-day period for Appellant to file its request for review ran from the time of receipt.

## I.

The facts of this case are relatively straightforward. Appellee advertised job number 11–99, contract number F–96730, Waipahu Wastewater Pump Station Modifications (contract) for public bid. On October 28, 1999, the sealed bids were opened. RCI Environmental Inc.(RCI) submitted the lowest bid on the contract in the amount of $5,027,645.50. Appellant submitted the second lowest bid of $5,364,835.00.

On November 2, 1999, Appellant filed a protest with Appellee's director.[2] The root of Appellant's complaint was that the value of the plumbing work was greater than one percent of the total bid submitted by RCI and, thus, required the listing of a specialty C–37 plumbing contractor. *See generally Okada Trucking Co. v. Bd. of Water Supply,* 97 Hawai'i 450, 460–61, 40 P.3d 73, 83–84 (2002) (explaining that, pursuant to HRS § 444–9, a general engineering contractor may not perform speciality plumbing work). Without such a contractor listed, Appellant believed RCI's bid should be rejected.

On December 2, 1999, Appellant's president received a letter from Appellee's director denying Appellant's protest, return receipt requested. The letter was dated November 23, 1999, but postmarked November 29, 1999.[3]

On December 3, 1999, one day after receiving the denial letter, Appellant hand delivered a request for an administrative hearing (request) to Appellee's director, as the head of the purchasing agency.[4] By letter dated December 6, 1999, Appellee transmitted the request to the Office of Administrative Hearings. That office received the request on December 8, 1999. It appears from the record that all parties were aware of this filing and no prejudice occurred as a result of the timing of the appeal.

A hearing before the Office of Administrative Hearings was scheduled for December 17, 1999. Forty-five minutes before a prehearing conference was scheduled to commence, the hearings officer dismissed the request on two grounds. First, the hearings

---

2. Pursuant to HRS § 103D–701(a) (Supp.1999), "[a]ny actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation or award of a contract may protest to the chief procurement officer or a designee as specified in the solicitation." Such a protest must be submitted "in writing within five working days after the posting of [an] award of the contract[.]" *Id.*

3. Appellee contends in its answering brief that the envelope containing the director's decision was postmarked November 23, 1999. The record cited to, however, indicates that the envelope was postmarked November 29, 1999.

4. Pursuant to HRS § 103D–709 (1993), a "bidder, offeror, contractor or governmental body aggrieved by a determination of the chief procurement officer, head of a purchasing agency, or a designee" may appeal to "[t]he several hearings officers appointed by the director of the commerce and consumer affairs" for review. Such hearings "shall commence within twenty-one calendar days of receipt of the request."

officer determined that the request had been sent to the wrong office.

> [The] mandatory language in [HRS § 103D–712(a)] is clear as to the time, place, and manner of filing requests for administrative review—such as that attempted by the [Appellant]. **The record, however, is equally clear that [Appellant] has not complied with the requirement that such requests "shall be made directly to the office of administrative hearings [.]"** The fact that [Appellant] filed its request with the [Appellee] does not meet the threshold requirements of HRS § 103D–712(a) and does not confer jurisdiction on the office of administrative hearings. The authority of this office is set by statute and can neither be enlarged nor diminished by the independent receipt, and transmittal, of such a request by another office or a county or state government.

(Boldfaced emphasis added.) (Underscored emphasis in original.) Second, he ruled that the appeal was late because the request had been filed more then seven calendar days after the "issuance" of the denial letter, *i.e., the date of the letter.*

> [E]ven if making a request on the [purchasing agency] was to be construed to be the same as making it on this office, **the request was not made within seven calendar days required by that statute [ (HRS § 103D–712(a)) ]**. The record reflects that the [purchasing agency] **issued its decision denying [Appellant's] protest on November 23, 1999, and yet [Appellant's] request was not made until 10 days later on December 3, 1999.** Once again, the statute is clear in requiring that such requests be made "within seven calendar days of the issuance of a written determination" **rather than specifying either the date of mailing or date of receipt** to be the time from which the seven calendar days begins to run.

(Boldfaced emphases added.) (Underscored emphasis in original.) (Citations omitted.) An order of dismissal was filed on December 17, 1999 by the Office of Administrative Hearings, dismissing Appellant's request for an administrative hearing to review Appellee's denial of Appellant's protest.

On December 21, 1999, Appellant filed a motion to set aside the dismissal and requested a new hearing. By letter dated December 23, 1999, the hearings officer denied this motion on the ground that the Office of Administrative Hearings lacked jurisdiction. On December 23, 1999, Appellant filed an application for judicial review with this court.[5] It is undisputed that the contract was eventually awarded to RCI.

## II.

On appeal, Appellant argues that filing with the Office of Administrative Hearings is not a jurisdictional requirement, and the mistake in filing it with Appellee did not result in prejudice to the other party. Secondly, Appellant argues that the term "issuance[,]" as used in HRS § 103D–712(a), means that the statutorily required seven-day period commences upon the date the decision is received, and not the date of the decision letter, as ruled by the hearings officer.

## III.

With respect to Appellant's first point, it should be noted that an agency's jurisdictional power is strictly a statutory creation and an agency's authority is limited by the terms of the governing statute. *See Ogle County Bd. v. Pollution Control Bd.,* 272 Ill.App.3d 184, 208 Ill.Dec. 489, 649 N.E.2d 545, 551, *appeal denied,* 163 Ill.2d 563, 212 Ill.Dec. 424, 657 N.E.2d 625 (1995). Consequently, an agency which acts outside its statutory authority is acting without jurisdiction. *See id.* In *Ogle County Bd.,* the Illinois appellate court explained that "jurisdiction" has three aspects in the administrative law context:

> (1) personal jurisdiction (*i.e.,* the agency's authority over the parties and intervenors involved in the proceedings); (2) subject-matter jurisdiction (*i.e.,* the agency's power over the general class of the cases to which the particular case belongs); and (3)

5. Under HRS § 103D–712(b), "[r]equests for judicial review under section 103D–710 shall be filed in the supreme court within ten calendar days after the issuance of a written decision by the hearings officer under section 103D–709."

an agency's scope of authority under its [enabling] statute.

*Id.* (citing *Bus. & Prof'l People for the Pub. Interest v. Illinois Commerce Comm'n,* 136 Ill.2d 192, 144 Ill.Dec. 334, 555 N.E.2d 693 (1989)). The third jurisdictional aspect involving statutory authority has been defined as the ability of the agency to adjudicate and enter a particular order before it. *See id.*

Appellee contends that the third administrative jurisdictional aspect is not satisfied because the "direct filing" provision was mandatory, and, therefore, non-compliance precluded the Office of Administrative Hearings from acquiring jurisdiction over the request. But Appellant argues that the filing requirement of HRS § 103D–712(a) is simply directory because it relates to the proper and orderly conduct of business rather than the "substantial rights" of the parties involved. An agency's statutory interpretation is reviewed on a *de novo* basis. *See Keanini v. Akiba,* 84 Hawai'i 407, 412, 935 P.2d 122, 127 (App.), *cert. denied,* 85 Hawai'i 81, 937 P.2d 922 (1997).

### IV.

In *State v. Samonte,* 83 Hawai'i 507, 928 P.2d 1 (1996), this court set forth a detailed analysis as to when statutory requirements are mandatory and when they are merely directory. In *Samonte,* HRS § 612–18(c) (1993) was violated because the trial court did not provide the "names of prospective jurors to be summoned to sit as a jury[ ] and the contents of juror qualification forms[,]" even though the statute explicitly stated that this information "shall" be provided to the litigants involved. *Id.* at 517–18, 928 P.2d at 11–12 (footnotes omitted). This court noted that "the use of the word 'shall' in the statute is not dispositive of the issue of whether the statute is mandatory rather than directory." *Id.* at 518, 928 P.2d at 12 (quoting *Jack Endo Elec., Inc. v. Lear Siegler, Inc.,* 59 Haw. 612, 616, 585 P.2d 1265, 1269 (1978)). In holding

that "shall" was utilized in a directory fashion, *id.* at 523, 928 P.2d at 17, the following test was adopted:

> "Where the directions of a statute are given merely with a view to the proper and orderly conduct of business, or relate to some immaterial matter, it is generally regarded as directory." *Miller v. State,* 94 Okla.Crim. 198, 232 P.2d 651, 658 (App. 1951) (citation and quotation marks omitted). Furthermore, "*a statute is directory rather than mandatory if the provisions of the statute do not relate to the essence of the thing to be done or where no substantial rights depend on compliance with the particular provisions and no injury can result from ignoring them.*" *Jack Endo Electric, Inc.,* 59 Haw. at 617, 585 P.2d at 1269.

*Id.* at 518, 928 P.2d at 12 (emphases added).[6] Applying the factors expressed above, I conclude that the filing provision in HRS § 103D–712(a) is directory, and not mandatory.

### V.

As mentioned, "[w]here the directions of a statute are given merely with a view to the proper and orderly conduct of business ..., [the statute] is generally regarded as directory." *Samonte,* 83 Hawai'i at 518, 928 P.2d at 12 (citation omitted).

Effective July 1, 1999, Act 162 amended HRS § 103D–712 and provided that requests for administrative hearings be made to the office of administrative hearings. Prior to that date, such requests were to be filed with the head of the purchasing agency or the chief procurement officer, as Appellant did in the instant case. *See* HRS § 103D–712(a) (Supp.1998).

On its face, HRS § 103D–712 appears to relate to the orderly conduct of business. In designating one office for filing hearing requests, the measure adopted a uniform and,

---

**6.** I observe, moreover, that a "mandatory" requirement is not necessarily coincident with a jurisdictional one. In *Matson Navigation Co. v. Fed. Deposit Ins. Corp.,* 81 Hawai'i 270, 916 P.2d 680 (1996), this court held that "[a] mandatory requirement ... is not necessarily 'jurisdictional.'" *Id.* at 276, 916 P.2d at 686. It was concluded that the requirement to post a sufficient bond, although "mandatory" under the subject statute, did not preclude a court's jurisdiction where the judge erroneously determined that a defective bond was sufficient. *Id.* at 277, 916 P.2d at 687.

thus, orderly procedure for appeal purposes. In doing so, the legislature advanced the efficiency of the offices involved. It was declared that "[the] Committee is in support of this measure as a means of promoting greater efficiency in procurement procedures." Sen. Stand. Com. Rep. No. 223, in 1999 Senate Journal, at 1024. While admittedly brief, the legislative history supports the proposition that the direct filing requirement was intended to expedite the orderly conduct of business. This history demonstrates that the amendment was aimed at administrative efficiency and the orderly conduct of business, rather than determining the substantive rights of the parties involved. Consequently, Appellant's mistake in filing, while technically incorrect, did not violate a mandatory requirement and, hence, did not affect the jurisdiction of the Office of Administrative Hearings.[7]

## VI.

### A.

The hearings officer also determined that the request must be denied under HRS § 103D–712(a) because the request was not made within seven calendar days of the date the decision was signed. It is undisputed that Appellee's director signed his decision denying the protest on November 23, 1999, and the request was received by Appellee ten days later, on December 3, 1999. Thus, under the hearings officer's interpretation, the time for requesting review had already expired by the time Appellant received the decision.

7. I note, conversely, that time limitations for filing an appeal have been held to be mandatory and jurisdictional. This court has expressly stated that "where the language of a statute is plain and unambiguous that a specific time provision must be met, it is mandatory and not merely directory." State v. Himuro, 70 Haw. 103, 105, 761 P.2d 1148, 1149 (1988). This stands to reason, as an extension beyond the time to appeal would impact the substantial rights of a party.

For the reasons stated infra, the filing deadline is not implicated in the present appeal.

8. The majority states that Appellee has taken the position that the date of issuance should be con-

On appeal, Appellee takes the position that "issuance" is the date the decision "was made final and signed," as was ruled by the hearings officer. In the alternative, Appellee contends that "issuance" was the date it was "mailed" or "at the latest" when it was "postmarked." Thus Appellee suggests three different points of time as measuring issuance. In its own recasting of the issue, the majority's premise is that "issuance" should refer to the date the decision was mailed, "as evidenced by the postmark date." Majority opinion at 988. An interpretation of the term "issuance" other than the date of the decision conflicts with the facts inasmuch as the hearings officer specifically eschewed the interpretation of issuance as referring to "mailing" and expressly construed issuance to mean the date the agency made its decision, i.e., November 23, 1999.[8]

### B.

Initially, it must be noted that Appellee's view of a statute such as HRS § 103D–712(a) does not surpass ours in interpreting legislative intent.[9] See Ka Pa'akai O Ka'aina v. Land Use Comm'n, 94 Hawai'i 31, 41, 7 P.3d 1068, 1078 (2000) ("Although judicial deference to agency expertise is generally accorded where the interpretation and application of broad or ambiguous statutory language by an administrative tribunal are subject to review, this deference is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history." (Internal quotation marks, brackets, and citations omitted.)); GATRI v. Blane, 88 Hawai'i 108, 114, 962 P.2d 367, 373

strued "as the date of mailing, as evidenced by the postmarked date." Majority opinion at 988. This statement is misleading. Appellee has taken the position that the date of signature is the date of issuance and also that issuance "must occur either at the time of mailing or prior to that time." See majority opinion at 987 note 2.

9. The majority argues the agency's position should be given deferential weight, see majority opinion at 987, but then rejects the agency's view that the decision "was issued when it was made final and signed." See majority opinion at 988 ("[A]s a matter of law, the date of issuance cannot be interpreted as meaning the date on which a written determination is signed by the director.").

(1998) ("[A]n agency['s] conclusion of law[ ] ... is freely reviewable to determine if the agency's decision was ... affected by other error of law." (Internal quotation marks and citation omitted.)).

Neither HRS chapter 103D, nor the regulations adopted under this chapter, Hawai'i Administrative Rules (HAR) title 3, subtitle 11, chapter 126, define the term "issuance" as it is used in HRS § 103D–712(a). In interpreting the term "issuance," we, of course, cannot "make words mean what we choose to make them mean, rather than give them their true meaning[.]" *Williamson v. Hawai'i Paroling Auth.*, 97 Hawai'i 183, 196, 35 P.3d 210, 223 (2001) (Acoba, J., dissenting, joined by Levinson, J.) (interpreting the meaning of the words "shall," "minimum," and "maximum"). Thus, "[w]hen construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." *Southern Foods Group, L.P. v. State*, 89 Hawai'i 443, 453, 974 P.2d 1033, 1043 (1999) (citations omitted). Second, we "must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." *Id.*

### VII.

In considering the language of the statute, "[w]here a term is not statutorily defined, ... we may rely upon 'extrinsic aids' to determine such intent." *Ling v. Yokoyama*, 91 Hawai'i 131, 133, 980 P.2d 1005, 1007 (App.1999) (citations omitted). Black's Law Dictionary defines the term "issue[,]" in relevant part, as follows:

> To send forth; to emit; to promulgate; as, an officer issues orders, process issues from a court. To put into circulation; as, the treasury issues notes. To send out, to send out officially; to deliver, for use, or authoritatively; to go forth as authoritative or binding. *When used with reference to writs, process, and the like the term is ordinarily construed as importing delivery to the proper person,* or the proper officer for service, etc.

*Black's Law Dictionary* 830 (6th ed.1990) (emphasis added). The term "issue" is the verb of the word "issuance[,]" which is a noun. *See Webster's Third New Int'l Dictionary* 1201 (1986). A statute is ambiguous if it is capable of being understood by reasonably well-informed people in two or more different ways. *See Southern Foods Group,* 89 Hawai'i at 453, 974 P.2d at 1043; *see also Gray,* 84 Hawai'i at 148, 931 P.2d at 590 ("When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists." (Citations omitted.)). "Issue" can be construed as meaning "[t]o send forth; to emit." *Black's Law Dictionary* at 830. "Issue," however, also can mean "delivery to the proper person" in relation "to writs, process, and the like[.]" *Black's Law Dictionary* at 830. Because the term "issuance" is subject to different interpretations, it is ambiguous.[10]

Quoting HRS § 1–14 (1993), the majority contends that the term "issuance" must be construed according to its most " 'known and usual signification.' " Majority opinion at 987. HRS § 1–14, however, states, "The words of law are *generally* to be understood in their most known and usual signification[.]" (Emphasis added.) Equally clear, it is statutorily mandated that when "words of law are ambiguous[,]" not only must the legislature's objective be considered, but we are mandated to reject a construction which would lead to an absurdity:

(1) The meaning of ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

(2) *The reason and spirit of the law, and the cause which induced the legislature to enact it, may be considered to discover its true meaning.*

(3) *Every construction which leads to an absurdity shall be rejected.*

---

10. The majority acknowledges that the term is subject to different interpretations. *See* majority opinion at 987 (agreeing that the term "issuance" is ambiguous and noting different interpretations).

HRS § 1–15 (1993) (emphases added). Inasmuch as HRS § 103D–712(a) involves notice of a decision affecting the substantive rights of a party, it is analogous to a writ or process in which issuance denotes "delivery." This definition of the term "issuance" is also more apt for the reasons that follow.

## VIII.

This court has said that "[t]he legislature is presumed not to intend an absurd result" and that a "rational, sensible, and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable." *Southern Foods Group*, 89 Hawai'i at 453–54, 974 P.2d at 1043–44 (citations and brackets omitted). *See also* HRS § 1 15(3), *supra.* An interpretation of the word "issuance" to refer to the date of the denial letter could lead to an unreasonable, unjust, and absurd result, which we are mandated to avoid. *See* HRS § 1–15.

For instance, in the present case, the decision was signed by Appellee's director on November 23, 1999. If this date were considered the date of issuance, Appellant would have had to have filed its appeal by November 30, 1999. *See* HRS § 103D–712(a) (request must be "made ... within seven calendar days of the issuance of a written determination"). But, Appellant did not receive the decision until December 2, 1999, meaning that by the time the decision was obtained, it was already too late for Appellant to file an appeal. An interpretation of issuance which leads to such a result is plainly unjust and leads to an absurdity.

The majority refers to the "date of mailing, as evidenced by the postmark date." Majority opinion at 988. But, the date of mailing may be different from the postmarked date inasmuch as a letter may be mailed and postmarked on different dates. Moreover, a construction of the term "issuance" as meaning the postmarked date of the decision, could also lead to a similar unjust result. The envelope from the agency was postmarked November 29, 1999, some six days after it was dated. It may be inferred that either Appellee delayed mailing the decision, resulting in the delayed postmark date, or the letter was detained · in the post office before being postmarked. *Any* substantial delay by the post office in delivering the decision, then, would deny a party with a meritorious appeal the opportunity to adjudicate the claim.

Plainly, there is nothing to · indicate that the legislature intended such a result. Rather, Appellee's action of sending the decision to Appellant *by return receipt requested plainly demonstrates that receipt was the pivotal point triggering the time limit for requesting a review.*[11]

Finally, the date of mailing as the reference point of issuance would pose similar problems.[12] There is no evidence in the record at all of when the decision was mailed. Further, as previously stated, there is no indication that the postmark date coincides with the date of mailing. Thus, the postmarked date does not assure that the decision was mailed by the director on that date. Of course, the date of postmark would have no relationship to the date the protesting

---

11. The majority indicates that an interpretation of "issuance" as the date of mailing "is in harmony with other provisions of the legislative scheme[,]" majority opinion at 989, and cites HAR § 3–126–74 (relating to the issuance of a *hearing officer's* decision, rather than the director's decision). This rule, however, explicitly requires that "a copy of the hearings officer's decision ... be served upon each party *by personal service or by registered or certified mail, return receipt requested.*" (Emphasis added.). Thus, HAR § 3–126–74, despite other language, appears to subscribe to the view that *receipt* of a decision is necessary and must be confirmed. Moreover, as stated *infra*, "[i]t is axiomatic that an administrative rule cannot contradict or conflict with the statute it attempts to implement."

*Agsalud v. Blalack*, 67 Haw. 588, 591, 699 P.2d 17, 19 (1985) (citations omitted). Accordingly, any contrary interpretation of HAR § 3–126–74 would be rejected in light of the governing statute, HRS § 103D–709.

12. The majority suggests that the untimeliness of Appellant's request is because of the failure to comply with the direct filing provision, rather than the actual date of mailing. *See* majority opinion at 989. This conclusion glosses over the decision by the hearing's officer to deny the appeal using the date of signature as the review time starting point. Moreover, as stated *supra*, there is no evidence as to the date of mailing and it is unknown inasmuch as it may be different from the date of postmark.

party actually received the decision, thus potentially eliminating an aggrieved party's rights to review without timely notification of the decision. Hence, any reliance on the "date of mailing[,]" majority opinion at 989, leads to a further ambiguity.[13]

## IX.

That issuance means delivery to the proper person is confirmed by construing the statute as a whole, in view of its purpose, applying established rules of statutory construction. *See State v. Davis*, 63 Haw. 191, 196, 624 P.2d 376, 380 (1981) ("It is fundamental in statutory construction that each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole." (Citations omitted.)); *In re Tax Appeal of Queen's Med. Ctr.*, 6 Haw.App. 152, 157, 715 P.2d 349, 352 (1985) ("A fundamental rule of statutory construction is that the statute's language must be read in the context of the entire statute and construed in a manner consistent with its purpose." (Citing *State v. Saufua*, 67 Haw. 616, 699 P.2d 988 (1985).)). Central to the new procurement code was an administrative system designed to preserve the rights of aggrieved parties and to maintain fairness.

> [T]his bill provides for legal and contractual remedies for parties aggrieved over the solicitation or award of a contract. Parties are encouraged to settle any disputes through administrative processes to save time and expense for both parties *while preserving all rights and maintaining fairness*. A party may challenge the solicitation and awards process, a debarment or suspension, and a breach of contract. The hearing officer will have the power to subpeona witnesses, hear testimony, find facts, make conclusions of law; and issue written decisions. Any final decision of the DCCA hearings officer may be appealed in the Hawai'i Supreme Court. For contract disputes, both the governmental body and the contracting party may proceed in circuit

court after the Chief Procurement Officer renders a decision.

Stand. Com. Rep. No. S8–93, in 1993 Senate Journal, at 39–40 (emphasis added). When concerned with the resolution of a protest such as that brought by Appellant, then, the legislature clearly intended to preserve the rights of all parties, as stated *supra*, and to establish a fair system. *See* Sen Stand. Com. Rep. No. S8–93, in 1993 Senate Journal, at 39 (stating that the procurement code is designed to "[p]rovide for [the] fair and equitable treatment of. all persons dealing with the government procurement system").

This is consistent with the recognition that it is in the public interest to secure fair treatment of bidders. *See In re. Carl Corp. v. State*, 93 Hawai'i 155, 172, 997 P.2d 567, 584 (2000) (recognizing the "policy considerations underlying the code" including "those of providing for fair and equitable treatment, ensuring accountability, and increasing confidence in the integrity of the system"); *In re Arakaki v. State*, 87 Hawai'i 147, 150, 952 P.2d 1210, 1213 (1998) (instructing a hearing officer to meet "the legislative objective of providing for the 'fair and equitable treatment of all persons dealing with the government procurement system' "); *In re CARL Corp. v. State*, 85 Hawai'i 431, 456, 946 P.2d 1, 26, *reconsideration denied* (Oct. 20, 1997) ("The purposes of the Procurement Code are to provide for the *fair and equitable treatment of all persons involved in public procurement* ... and to provide safeguards for maintaining a procurement system of quality and integrity." (Quoting *Planning & Design Solutions v. City of Santa Fe*, 118 N.M. 707, 885 P.2d 628, 631 (1994) (emphasis added).); *Federal Elec. Corp. v. Fasi*, 56 Haw. 57, 60, 527 P.2d 1284, 1288 (1974) (noting that "fair competition among the bidders is the prime object of [the procurement code] and anything which tends to impair this is illegal" (quoting *Lucas v. American–Hawai'ian Eng'g and Constr. Co.*, 16 Haw. 80, 90 (1904)); *Okada Trucking Co.*, 97 Hawai'i at 562, 40 P.3d at 964 (citing testimony that the procurement code was designed to "treat all

13. As indicated in note 12, contrary to the majority's assertion that "the date of mailing ... creates an easily verifiable way of establishing the filing deadline[,]" majority opinion at 989, there

is no verifiable way of determining the date of mailing. It is evident, as in this case, that receipt was pivotal inasmuch as Appellee requested acknowledgement by way of a return receipt.

bidders fairly and equitably in their dealings with the government procurement system and to increase public confidence in the integrity of the government procurement system" (citation omitted)), *vacated and remanded on other grounds*, 97 Hawai'i 450, 40 P.3d 73 (2002); *cf. Marshall Constr. Co. v. Bigelow*, 29 Haw. 48, 53 (1926) (noting that the public interest is a factor in accepting bids, and the purpose of bidding is to "secure fair competition and prevent favoritism and extravagance"); *Wilson v. Lord–Young Eng'g Co.*, 21 Haw. 87, 97 (1912) (Perry, J., concurring) (explaining that the purpose of the procurement code is to "secure to the state the benefit and advantage of fair and just competition between bidders and at the same time close, as far as possible, every avenue to favoritism and fraud in its varied forms"); *Lucas*, 16 Haw. at 90 ("The object of all such statutory provisions is to prevent favoritism, corruption, extravagance and improvidence in the awarding of all public contracts." (Citation omitted.)).

Thus, the definition of "issuance" in the context of resolving bid protests that best corresponds with the legislative intent of "preserving all rights and maintaining fairness" is that which refers to delivery of the decision to the bidder. Stand. Com. Rep. No. S8–93, in 1993 Senate Journal, at 39–40. *See, e.g.*, HRS § 103D–701(a) ("Any actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation or award of a contract may protest to the chief procurement officer or the head of a purchasing agency."); HRS § 103D–704 ("The procedures and remedies provided for in this part, and the rules adopted by the policy office, shall be the exclusive means available for persons aggrieved in connection with the solicitation or award of a contract, a suspension or debarment proceeding, or in connection with a contract controversy, to resolve their claims or differences.").

There is no legislative history indicating that the legislature exercised a "prerogative" "to decide that the time for filing a request for administrative review should begin running sooner rather than later." Majority opinion at 988. As stated *supra*, the framework of the procurement code insofar as it relates to bid disputes indicates a concern for fairness in the treatment of bidders. Certainly, the interest in expediting the award process as a whole, *see In re CARL Corp.*, 85 Hawai'i at 456, 946 P.2d at 26, cannot conflict with "preserving all rights and maintaining fairness." Standing Comm. Rep. No. S8–93, in 1993 Senate Journal, at 39. Thus, the time for requesting review should run from the time a bidder receives, and, thus, has notice of the decision. *A bidder's right to review as prescribed by the statute would not otherwise be "preserv[ed]."* Under the majority's definition of "issuance," a party's right to appeal could be barred without it ever having received notice of a decision, a result that is fundamentally unfair and contrary to the intent of the legislature.

## X.

Other jurisdictions have held that for purposes of triggering the time for appeal, the date of "issuance" may be construed to be the date an aggrieved party receives actual notice of a decision. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 676, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Palisades Citizens Ass'n v. Dist. of Columbia Alcoholic Beverage Control Bd.*, 324 A.2d 692, 695 (D.C.1974) (relying upon *Skelly Oil Co.* and holding "that 'issuance' requires public knowledge of the substance of the order"); *Rayburne v. Queen*, 76 Wyo. 393, 303 P.2d 486, 490 (1956) ("Certainly a party must receive some notice either actual or constructive if he [or she] is to be bound by [a] decision.").[14] In *Skelly Oil Co.*, a contract involving the construction of a pipeline obligated the petitioners to provide gas unless

---

14. Appellee attempts to distinguish this line of cases by arguing that the director's decision was public inasmuch as it could have been obtained pursuant to HRS § 103D–105. That statute provides that, except for confidential materials, "government records relating to procurement shall be available to the public as provided in chapter 92F." But, Appellant could not have requested the decision under HRS § 103D–105 unless it had some way of knowing that the decision had been signed. Under Appellee's approach, Appellant's time to appeal would be triggered without Appellant's knowledge.

"Michigan–Wisconsin Pipe Line Company shall fail to secure . . . a certificate of public convenience." 339 U.S. at 669, 70 S.Ct. 876. The contract indicated that in the event of such a contingency, "at any time after December 1, 1946, but before the *issuance* of such [a] certificate" the petitioners could terminate the contract. *Id.* (emphasis added). On November 30, 1946, the Federal Power Commission issued a certificate of public convenience, but the information was not made public. *Id.* On December 2, 1946, the petitioners gave notice of the termination of their contracts. *Id.* On the same day, the news of the Commission's action was made public. *Id.* Michigan–Wisconsin brought suit against the petitioners alleging that the certificate of public convenience had been issued prior to the petitioner's attempt to terminate the contract, and sought a declaration that the contract was still binding. *Id.* The district court held that the contract was still in effect, and the court of appeals affirmed. *Id.*

On appeal, the United State Supreme Court construed the term "issuance" as utilized in the contract, and held that "a certificate cannot be said to have been issued for purposes of defining rights and the seeking of reconsideration by an aggrieved person if its substance is merely in the bosom of the Commission." *Id.* at 676, 70 S.Ct. 876. The Court stated that "[k]nowledge of the substance must to some extent be made manifest." *Id.* As a result, the Court held that "due administration of justice" required that the judgment be vacated and the case re- manded to the court of appeals. *Id.* at 678, 70 S.Ct. 876.[15] Inasmuch as rights of appeal are triggered by the date of "issuance," it would appear that the "due administration of justice[,]" *id.*, requires that a party must have received notice of the decision.

## XI.

"Ambiguities in statutory language should not be resolved so as to imperil a substantial right which has been granted." *Reconstruction Fin. Group v. Prudence Sec. Advisory Group*, 311 U.S. 579, 582, 61 S.Ct. 331, 85 L.Ed. 364 (1941). As indicated above, "[a] rational, sensible, and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable." *Southern Foods Group*, 89 Hawai'i at 453–54, 974 P.2d at 1043–44. Therefore, the term "issuance" under HRS § 103D–712(a) must be deemed the date of receipt by the petitioning party in order to effectuate the legislative intent of allowing an aggrieved party to appeal an erroneous decision. So measured, the request for an appeal was received within the seven calendar day period. The decision was received by Appellant on December 2, 1999. Seven days from December 2 would have been December 9. The request for a hearing was hand delivered to Appellee on December 3, 1999. This letter, in turn, was transmitted to the Office of Administrative Hearings on December 6, and received on December 8, 1999. Thus, the appeal was received one day earlier than statutorily required.[16]

---

**15.** Clearly, if a decision were merely mailed, but then not received, the decision would not be made manifest. Instead, the substance of the decision would be known only to the sender.

**16.** Appellant contends that "[e]ven assuming *arguendo* that the date of the postmark is the date of issuance," the request was timely filed on December 8, 1999, based on HAR § 3–126–49(a), which states:

*Unless otherwise provided by statute or rule,* in computing any period of time prescribed or allowed by this chapter, the day of the act, event, or default after which the designated period of time is to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, Sunday, or legal holiday in the State, in which event the period runs until the next day which is neither a Saturday, Sunday, nor a holiday. *Intermediate Saturday, Sundays, and holidays shall not*

*be included in a computation when the period of time prescribed or allowed is seven days or less.*

(Emphases added.) This rule provision does not apply, however, because the time for computing the seven-day period is "otherwise provided by" HRS § 103D–712(a) and HAR § 3–126–42, the more specific and the governing provisions. *See Agsalud v. Blalack*, 67 Haw. 588, 591, 699 P.2d 17, 19 (1985) ("It is axiomatic that an administrative rule cannot contradict or conflict with the statute it attempts to implement." (Citations omitted.)); *Topliss v. Planning Comm'n*, 9 Haw. App. 377, 391 n. 11, 842 P.2d 648, 657 n. 11 (1993) ("Administrative rules may not enlarge, alter, or restrict the provisions of the statute being administered." (Citations omitted.)). HRS § 103D–712(a) states that requests for review "shall be made within seven *calendar* days of the issuance of a written determination[.]" (Emphasis added.). *See also* HAR § 3–126–42

## XII.

Accordingly, I would vacate the hearings officer's December 17, 1999 order of dismissal and remand the case for further proceedings consistent with this opinion.

(stating that an administrative proceeding "shall commence by the filing of a request for hearing with the office of administrative hearings, department of commerce and consumer affairs within *seven calendar days, in accordance with section 103D–712*" (emphasis added)).